IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2015

## STATE OF TENNESSEE v. LAMAR MANDELL CULLOM

**Appeal from the Criminal Court for White County**
**No. 2013-CR-5977     Leon C. Burns, Jr., Judge**

_____

**No. M2014-00414-CCA-R3-CD – Filed June 25, 2015**

_____

Appellant, Lamar Mandell Cullom, was convicted in Count I of the indictment of casual exchange of a controlled substance as a lesser-included offense of the indicted offense of sale of cocaine, a Schedule II controlled substance within 1,000 feet of a drug-free zone. He was convicted in Count II of delivery of 0.5 grams or more of cocaine, a Schedule II controlled substance, within 1,000 feet of a drug-free zone. The trial court sentenced him to consecutive terms of eleven months, twenty-nine days and fifteen years, respectively. Appellant now challenges the sufficiency of the convicting evidence and testimony of a law enforcement officer that allegedly implied that appellant had a prior criminal history. Following our review, we affirm appellant's convictions. However, we remand for entry of a single judgment form indicating merger of the convictions. The judgment form should reflect that appellant is a Range II, multiple offender and that the mandatory minimum period of incarceration for appellant's range is twelve years. The judgment form should also note that the "conviction offense name" is "violation – drug-free zone," not "violation – drug-free school zone."

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed;**
**Remanded for Entry of Corrected Judgment**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

J. Patrick Hayes, Cookeville, Tennessee, for the appellant, Lamar Mandell Cullom.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Bryant C. Dunaway, District Attorney General; and Philip Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from a drug transaction between appellant and a confidential informant who was working with the White County Sheriff's Department narcotics division.

## I. Facts

The State's first witness was Demetria Phillips, a confidential informant working with the White County Sheriff's Department. In May 2012, Ms. Phillips contacted appellant and asked if he had any narcotics available for purchase. Appellant instructed her to meet him at his apartment thirty minutes later. Prior to driving to appellant's apartment, Ms. Phillips met with Detectives Joey Williams and Craig Capps, at which time they searched Ms. Phillips and her automobile. They wired Ms. Phillips with an audio/video recording device and provided her with $200 to purchase the drugs. She then drove to appellant's apartment.

Ms. Phillips testified that when she arrived, appellant was not at home but his girlfriend, Sara Cressman, was present. Ms. Phillips and Ms. Cressman talked with each other until appellant arrived approximately ten minutes later. Upon his arrival, appellant told Ms. Phillips that he had the narcotics, and he pulled them out of his pocket and handed her the drugs. She, in turn, gave appellant the money. Ms. Phillips asked if the substance was "soft or hard" cocaine, and appellant replied that it was "soft" cocaine. He told Ms. Phillips "that it was some really good stuff" and that he could get more if she needed it. When the transaction was complete, Ms. Phillips entered her vehicle and began to exit the parking lot. As she drove through the lot, she encountered a friend who was arriving at the apartment complex in her vehicle. Ms. Phillips lowered her window and spoke to her friend, but neither individual exited her vehicle. Ms. Phillips then drove back to the "staging area," where she gave the cocaine to the detectives and was searched again. The State played the recording of the transaction for the jury.

On cross-examination, Ms. Phillips acknowledged that the detectives who conducted the search of her person were male and that they did not search inside her undergarments. She said that she was able to obtain trust from the individuals from whom she purchased narcotics because her husband was friends with most of them. She denied that she used drugs herself. Ms. Phillips admitted that she had pleaded guilty to theft charges prior to appellant's trial. She also confirmed that she was paid $100 for her participation in the drug transaction involving appellant and that if she attempted to set up a transaction that did not transpire, she would not be paid.

The State then called Detective Joseph Williams, a narcotics detective with the White County Sheriff's Department. He testified that it was common for the department to utilize private citizens to conduct drug transactions because as an officer in the county,

"a lot of times these people know [him]." He stated, "Just, in particular, in this case, I've had dealings with [appellant] before." The trial court interrupted Detective Williams and cautioned the jury "not to draw any inference from that. We don't know what he's talking about, so you're not to infer other bad acts, crimes, or anything like that." Detective Williams continued and clarified that "some people in the community know [them] as law enforcement agents, so [they] use confidential [informants] that are citizens in the community to go out and purchase the drugs on our behalf." He acknowledged that the informants are paid for their services. He further explained the standard operating procedure of searching the informant and their vehicle and providing a recording device.

Detective Williams testified that on May 8, 2012, Ms. Phillips contacted him with regard to a potential drug purchase from appellant. Following the standard operating procedure, he met with Ms. Phillips at the "staging area" and provided her with $200 of "controlled buy money." When she left the area, Detective Williams conducted "roving surveillance" to be sure that Ms. Phillips did not leave the area of appellant's apartment without his knowledge. He followed Ms. Phillips back to the staging area when the transaction was complete. He received the drugs from Ms. Phillips and placed them in an evidence bag. He marked the bag with appellant's name and the agency's case number and placed the drugs in an evidence locker that was maintained by the evidence custodian.

Detective Williams explained that the recorder he provided to Ms. Phillips was "extremely difficult" to use because it was a hand-held recorder and one "can't just hold it up and point it at [the subject]." He also stated that the transaction occurred in the vicinity of a public park, Pierson Park.

On cross-examination, Detective Williams conceded that Ms. Phillips could have had "something" hidden on her person that he did not find but denied that she already had cocaine on her person when she made the transaction based on his viewing of the recording.

Lieutenant Janice Hale, an evidence custodian with the White County Sheriff's Department, offered testimony pertinent to chain of custody of the evidence. Ella Carpenter, a special agent/forensic scientist with the Tennessee Bureau of Investigation, testified that she analyzed the substance submitted and concluded that it was cocaine, a Schedule II controlled substance, weighing 0.56 grams. Suzi Cash, the interim director of the White County 9-1-1 office, testified that appellant's apartment, number 433 of Knoll Crest Apartments, is located 418 feet from the entrance to Pierson Park, a city park. The State rested its case, and appellant offered no proof.

Upon this evidence, the jury found appellant guilty of casual exchange as a lesser-included offense of sale of 0.5 grams or more of cocaine within 1,000 feet of a public park (Count I) and the indicted offense of delivery of 0.5 grams or more of cocaine within 1,000 feet of a public park (Count II). The trial court sentenced him to eleven months, twenty-nine days for casual exchange and to fifteen years as a Range II offender for delivery of a controlled substance. The parties agreed that because of the drug-free zone enhancement, the mandatory minimum for a Range II offender, twelve years, would be served at 100% release eligibility and the remaining three years would be served at thirty-five percent release eligibility. After an unsuccessful motion for new trial, this appeal follows.

## II. Analysis

Appellant raises two issues for our review: sufficiency of the convicting evidence and the alleged improper testimony by Detective Williams wherein he mentioned having prior interactions with appellant.

## A. Sufficiency of the Evidence

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury,

nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

Appellant was found guilty of casual exchange as a lesser-included offense of sale of a controlled substance. "A defendant commits this offense when he knowingly . . . casually exchanges a controlled substance . . . ." Tenn. Code Ann. § 39-17-418(a). "Exchange" is defined as "to part with, give, or transfer a substance in consideration of something received as an equivalent." T.P.I.-Crim. § 31.05. "'Casual' means without design." *Id.* Furthermore, "[t]he term 'casual exchange' does not exclude a transaction in which money is involved." *Id.* Appellant was also found guilty of Count II of the indictment, which required proof that he knowingly delivered a controlled substance. Tenn. Code Ann. § 39-17-417(b). The offense is a Class B felony if the substance weighs 0.5 grams or more and contains cocaine. *Id.* § 39-17-417(c)(1).[1]

As grounds for challenging the sufficiency of the evidence underlying his two convictions, appellant argues that: (1) the search of Ms. Phillips by the detectives was insufficient and the State could not prove that she did not have drugs on her person at the time of the transaction; (2) Ms. Phillips had an opportunity to receive drugs from Ms. Cressman while awaiting appellant's arrival; (3) Ms. Phillips had been convicted of theft and was being paid for her participation in the drug transactions; and (4) the video recording did not capture the exchange of drugs or money. As such, he argues, all of the evidence was circumstantial and cannot support his convictions.

All of the complaints voiced by appellant represent matters of credibility. Ms. Phillips and Detective Williams both testified that he searched her prior to the transaction, and both admitted that he did not search her undergarments. Appellant's counsel thoroughly cross-examined both individuals with regard to the alleged incomplete search. The video recording, while not clearly capturing the exchange of drugs and/or money between Ms. Phillips and appellant, recorded appellant's telling Ms. Phillips that the substance he was handing her was "soft cocaine," that it was "really good stuff," and that he could procure more if desired. Moreover, the video did not capture any interaction between Ms. Cressman and Ms. Phillips that could be construed as an

---

[1] Because appellant was convicted of engaging in the drug transaction within 1,000 feet of a public park (rather than a school zone), he is not subject to higher classification pursuant to Tennessee Code Annotated section 39-17-432(b)(1), but his release eligibility is nonetheless governed by the drug-free enhancement statute, *id*. § 39-17-432(c), (d).

exchange of a controlled substance. The jury heard the testimony concerning Ms. Phillips' prior conviction and her status as a paid informant but credited her testimony nonetheless. Viewed in the light most favorable to the State, the evidence was sufficient to establish that appellant possessed or engaged in a casual exchange of a controlled substance with Ms. Phillips and that he delivered the same to her within 1,000 of a public park.[2] Appellant is not entitled to relief on this claim.

## B. Detective Williams' Testimony

Appellant argued at the hearing on his motion for a new trial that due to the officer's testimony, the jury "knew he had a prior conviction," which made it impossible for him to receive a fair trial.

As noted above, Detective Williams testified that it was common for the department to utilize private citizens to conduct drug transactions because as an officer in the county, "a lot of times these people know [him]." He stated, "Just, in particular, in this case, I've had dealings with [appellant] before." The trial court interrupted Detective Williams and cautioned the jury "not to draw any inference from that. We don't know what he's talking about, so you're not to infer other bad acts, crimes, or anything like that." While appellant failed to lodge a contemporaneous objection during trial, the State likewise does not argue that waiver applies.

We note that the trial court immediately interceded, halted the officer's testimony, and promptly instructed the jury that it should refrain from drawing any inferences from the statement. Jurors are presumed to follow the instructions of the court. *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004) (citations omitted). Appellant has offered no argument that would suggest that the jury failed to follow the court's instructions in this regard. Based on that fact, in conjunction with the overwhelming evidence of appellant's guilt, we cannot conclude that any error rises to the level of reversible error. Appellant is without relief on this claim.

## C. Merger and Corrected Judgment

The record reflects that after receiving the verdicts, the trial court properly noted that appellant's misdemeanor conviction for the lesser-included offense of casual

---

[2]   We note that a finding of guilt on the lesser-included offense of casual exchange and the indicted offense of delivery of a controlled substance within a drug-free zone may be characterized as inconsistent. However, our supreme court has held that inconsistent verdicts are permitted as long as there is sufficient evidence from which a rational fact finder could find a defendant's guilt beyond a reasonable doubt on the charges on which the defendant was convicted. *Wiggins v. State*, 498 S.W.2d 92, 93 (Tenn. 1973). The verdicts are, therefore, not incongruous with one another.

exchange of a controlled substance should merge into his felony conviction for delivery of a controlled substance. However, the judgment form fails to reflect merger.

We also note that the corrected judgment forms lists as a special condition that the case involved violation of a drug-free zone; the indicted offense and convicted offense on the corrected judgment form incorrectly list it as a drug-free *school* zone. (emphasis added). Therefore, we remand for correction of the judgment form to reflect merger of the two convictions and removal of the word "school" under the headings "Indictment" and "Conviction."

Although not raised by either party, we note an additional clerical error in the judgment form that requires correction. Generally, "[r]elease eligibility for each defendant sentenced as a Range II multiple career offender shall occur after service of thirty-five percent (35%) of the actual sentence imposed less sentence credits earned and retained by the defendant." Tenn. Code Ann. § 40-35-501(d). A violation of Tennessee Code Annotated section 39-17-432, a controlled substance offense committed within a drug-free zone, however, requires that

> [n]otwithstanding any other law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence. Any sentence reduction credits the defendant may be eligible for or earn shall not operate to permit or allow the release of the defendant prior to full service of the minimum sentence.

Id. § 39-17-432(c).

As noted above, appellant was sentenced as a Range II, multiple offender for commission of a Class B felony. *See id.* § 39-17-417(c)(1). His sentencing range was twelve to twenty years. *Id.* § 40-35-112(b)(2). The trial court sentenced appellant to fifteen years. Reading the applicable Code sections together, we reach the conclusion that appellant must serve one hundred percent of twelve years of his fifteen-year sentence. The parties agreed during the sentencing hearing that the mandatory minimum sentence is twelve years, but the judgment form does not reflect such. Consequently, we must remand the case for the entry of a corrected judgment form that reflects in the "Sentence Length" area of the judgment form that appellant must serve a minimum mandatory sentence of twelve years. As a result of merger and the corrected judgment, appellant will serve twelve years at one hundred percent release eligibility and three years at thirty-five percent release eligibility.

## CONCLUSION

Based on the briefs of the parties, the record as a whole, and controlling legal authority, we affirm appellant's convictions. However, we vacate the judgment for Count I and remand this cause for entry of a single judgment form consistent with this opinion reflecting merger and correcting the aforementioned clerical errors.

_____
ROGER A. PAGE, JUDGE